## Brewer v. Delaware County Commissioners.

*Counties — County buildings — Jails — Grand jury recommendations — Approval by court—Acts of June 1, 1883, June 19, 1911, and April 21, 1921.*

1. Under the Acts of June 1, 1883, P. L. 58, June 19, 1911, P. L. 1039, and April 21, 1921, P. L. 271, relating to "the report of two successive grand juries," as to the acquisition of land for a county jail, and the approval of such reports by the Court of Quarter Sessions, the findings of the grand jury and the court are not required to be in the exact words of the statute; such findings are sufficient if they contain the essential requirements of the statute.

2. If, in such case, the court has made an order approving the reports, it cannot subsequently retract the order, and the county commissioners have no power to refuse to perform the duty of erecting the building when once the duty has been imposed, nor are they excused by delay from carrying out the work.

3. The proceedings are not invalidated by reason of the delay of three years between the dates of the two reports before the court entered its order of approval, if such delay is explained by the unstable conditions existing during such period by reason of the World War.

Motion for preliminary injunction.   C. P. Delaware Co., Sept. T., 1925, No. 1130, in Equity.

*Geary & Rankin,* for plaintiffs.

*Albert J. Williams,* County Solicitor, for defendants.

JOHNSON, P. J., and FRONEFIELD, J.—The plaintiffs by their bill aver that the defendants are the County Commissioners of Delaware County, and as such are proceeding to acquire certain land in the Borough of Media, the county-seat of Delaware County, as a site for a new jail, and that they do not possess the legal power to do this; hence they ask to have the defendants restrained by an injunction.

The legal authority to acquire land for a jail site is the Act of June 1, 1883, P. L. 58. This act was amended by the Act of June 19, 1911, P. L. 1039, and the Act of April 21, 1921, P. L. 271; the first refers to the subject in question and the second to the location of the land to be acquired, at or near the county-seat, which subject does not concern the present controversy.

By the Act of 1883, as amended by the Act of 1911, the authority to acquire land for a jail is conditioned upon "the report of two successive grand juries," "and the approval of the same by the Court of Quarter Sessions of such county that the necessities of the county require ground at the county-seat," "for the purposes of a county jail or workhouse."

The reports of two successive grand juries made at the September and December Sessions, 1916, criticise the conditions at the jail as very unsatisfactory, and recommended "that the proper authorities, by purchase or other legal methods, acquire sufficient grounds and erect thereon such building or buildings as may be necessary for the purpose of a county jail and workhouse."

The court approved these recommendations on Dec. 8, 1919.

The cardinal question is whether this is such a sufficient compliance with the law as to invest the defendants with the power to acquire land for the purpose named.

The grand juries, being charged by the law with the duty of inquiring and determining if the necessities of the county require the acquisition of land for a county jail, answer this inquiry by saying, in effect, that the present condition does not comply with such necessities, and recommending as a remedy for this condition that land be acquired and jail be built, which shall be necessary for county purposes. This is in effect saying, in the words of the statute, "that the necessities of the county" require this to be done.

Where a man inquiring of his doctor if he is afflicted with a certain disease, is answered, "Your condition is bad and I recommend the only cure applicable to the condition of which you inquire," the necessary conclusion is that such disease exists.

It is manifest, therefore, that, unless the findings of the grand juries and court are required to be in the exact words of the statute, these words contain the essential requirements and are sufficient. The statute does not require the use of the exact words.

We have been referred to some decisions for light on the question under consideration.

In Bennett v. Norton, 171 Pa. 221, the report of the first grand jury was a mere recommendation for the erection of a new court-house, saying nothing about the necessities of the county. This of itself was sufficient warrant for the conclusion that there was not the report of the two grand juries that the necessities of the county require the purchase of the ground.

In Allegheny County v. Smith, 11 Dist. R. 704, there was a motion to vacate the appointment of viewers. It appears that a petition of the county commissioners was presented to the court, setting forth that, in their judgment, the necessities of the county required ground for all the purposes named in the statute for which land may be procured. This petition was referred to two successive grand juries, who simply reported their approval. There was no designation of the particular purpose for which the land was desired, and there was no finding of the grand juries that the acquisition of such land was necessary for county purposes. The appointment of viewers was vacated by Judge Frazer. It is evident that this case sheds no light on the instant question.

In re Reports of Grand Jury, 20 Dist. R. 867, the proceeding was treated as an application to the court to approve the reports of grand juries. The proceeding began with a reference to the grand jury of a proposition to build a new court-house. The grand jury disapproved the project of a new court-house, but approved of alterations and improvements to the present structure, and recommended the acquisition of particular land "on which to erect such additions and improvements as may be necessary for the safekeeping of the public records and the convenient transaction of the public affairs of the county." The court refused to approve the reports of the grand juries, because they recommended the procurement of particular land, as to which the grand juries had no jurisdiction, and that what they say as to necessity was not an unqualified necessity as required by the statute of 1883, but only a qualified necessity as to particular land which the commissioners, having entire jurisdiction of the choice of the site, might or might not select. It is worthy of mention that Judge Endlich, in his opinion, provisionally, for the sake of the argument, concedes our question where he says, "if, upon the reports of the grand jury, an implication fairly arises of an intent on its part to find a necessity and to confer upon the commissioners authority for the acquisition by them of such additional land as they, in the exercise of their lawful discretion, may determine upon, then an approval of the reports so qualified and limited might be within the power of the court."

Upon this first question, we are of opinion that, by the approvals of the grand juries and the court, there is a reasonable compliance with the requirements of the Act of June 1, 1883, and that the power was thereby conferred upon the defendants as county commissioners to procure the land necessary for a new jail, notwithstanding such approvals are not in the exact words of the statute.

Brewer *v.* Delaware County Commissioners.

A second objection to such power is preferred by the plaintiffs in their bill. They aver that, even if such power was conferred, it has been abandoned.

When the power is once conferred, even the court has no power to retract it: Appeal of the Commissioners of Northampton County, 57 Pa. 452.

When the duty to build a bridge is imposed on county commissioners, even fourteen years of inaction does not detract from the duty: Commissioners of York County *v.* Com., 72 Pa. 24.

Commissioners have no power to refuse to perform the duty of erecting a new court-house when once the duty is imposed: Com. *v.* Marshall, 3 W. N. C. 182.

We conclude, upon reason and authority, that, when the duty was imposed upon the county commissioners to acquire the land for a new jail, they had no power, either by express action or much less by implication from delay, to relieve themselves of the duty.

A third objection to such power is presented to the plaintiffs, in that they argue that the proceedings which culminated in the approval of the court on Dec. 8, 1919, were invalidated by the interval after the report of the grand jury at the December Sessions, 1916. The court will take judicial cognizance of a condition affecting the whole world. The apprehension of the entry of our country into the World War, the conditions existing during its continuance and the unstable state of affairs after its conclusion are amply sufficient to explain the delay, rather than to conclude that there was any purpose to abandon the project of building a new jail.

In accordance with the views expressed, we dismiss plaintiffs' motion for a preliminary injunction, with costs.

From William R. Toal, Media, Pa.